## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TRES LOTES LLC,
A New Mexico Limited Liability
Company
                 Plaintiff,

       vs.                                                                No. 14-CV-566-MV-WPL

BNSF RAILWAY COMPANY,
A Delaware Corporation,
and Mark Bryant
                  Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff Tres Lotes LLC's Motion to

Remand and Supporting Memorandum [Doc. 11]. The Court, having considered the motions,

briefs, relevant law, and being otherwise fully informed, finds that the motion is well-taken and

will be granted.

## BACKGROUND

Despite the extensive procedural maneuvering by the parties and the disagreement

regarding the timeline of events, the facts relevant to Plaintiff's Motion are easily summarized.

### I.   The Property Dispute

In the winter of 2011, Plaintiff Tres Lotes LLC ("Tres Lotes") began "looking into the

purchase of" a building for use as a law office, including the "Subject Property" at issue here.

Doc. 8-1 ¶ 8. While generally suitable to the Plaintiff, the south wall of the Subject Property

immediately abuts the BNSF Railway Company's ("BNSF") rail terminal, such that it "is not

physically possible to obtain access, ingress or egress" to a portion of the Subject Property without traversing BNSF's land. *Id.* ¶ 7. Tres Lotes alleges that, upon learning of the property's idiosyncratic limitations, its members met with Mark Bryant, a representative of BNSF, to discuss "their desire and intent to access, for ingress and egress purposes" a portion of BNSF's property immediately adjacent to the Subject Property. *Id.* ¶ 13. According to the Plaintiff, Bryant, after speaking with "unknown individuals at BNSF," advised the Plaintiff's members that BNSF agreed with the proposed access agreement. *Id.* ¶¶ 17-21.

Months later, after renovations had begun on the Subject Property, another BNSF employee, Mr. Harry Lara, approached workers at the building and accused them of trespassing on BNSF property; Plaintiff states that Lara later explained that BNSF had changed its mind and that Tres Lotes no longer had permission to traverse BNSF property. *Id.* ¶¶ 56, 60-63. Doc. 8-4 ¶¶ 14-15. As a result of its reliance on Bryant's initial representations, Tres Lotes claims that it has "expended or committed to expend in excess of $221,000.00," including the purchase of the Subject Property and subsequent renovations. Doc. 8-1 ¶ 68. Shortly after BNSF allegedly revoked its permission, Plaintiff filed suit in New Mexico state court.

## II. Procedural History

This is the parties' second trip to federal court on this dispute. On January 29, 2014, Tres Lotes filed its first Verified Complaint in a New Mexico district court against BNSF; BNSF promptly removed the action to federal court. *See* Doc. 1 at 3. Evidently perceiving a weakness in its argument against federal diversity jurisdiction, Tres Lotes dismissed the first Verified Complaint in favor of a second Verified Complaint, which purports to join as a defendant to the action Mark Bryant, a New Mexico citizen. *See* Doc. 8-1 ¶ 2; Doc. 1 at 3-4. Shortly after the

2

instant case was filed, BNSF again complied with the procedural requirements of 28 U.S.C. § 1446 and again removed the action to this Court.  *See* Doc. 1 at 5.

Tres Lotes seeks injunctive relief recognizing an easement, either by implication, necessity, estoppel, or prescription, across a portion of Defendant's property, including a "strip of BNSF's existing paved surface" about twenty-five feet wide.  *See* Doc. 8-1 ¶¶ 113-15, 117, 123, 131.  It appears that this injunction would, in effect, enforce the terms of the purported access agreement with BNSF.  The area included in this twenty-five foot strip, however, is immediately adjacent to Track 504, an active spur of BNSF's railroad, which is currently "subject to an industry track agreement" with a third party, who "uses the track for loading and storage of cars used to transport grain."  Doc. 1-3 ¶ 7.

In the alternative, the Plaintiff requests monetary damages not to exceed $74,000.

## DISCUSSION

A state court defendant is generally entitled to remove "a civil action over which the federal district courts would have original jurisdiction" to an appropriate federal court. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing 28 U.S.C. § 1441(a)).  However, in our constitutional system, "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Sunshine Haven Nursing Operations, LLC v. U.S. Dep't of Health and Human Servs. Ctrs. for Medicare and Medicaid Services*, 742 F.3d 1239 (10th Cir. 2014) (internal quotation marks omitted).  As a result of this limitation, "there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome."  *Williams v. Board of Regents of Univ. of N.M.*, 990 F. Supp. 2d 1121, 1133-34 (D.N.M. 2014).  *See also Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005) ("It is well-established that statutes conferring jurisdiction upon the federal courts, and

particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals."). Here, BNSF argues that removal is proper because this Court has both federal question and diversity jurisdiction over this case. *See* 28 U.S.C. §§ 1331, 1332. The Court disagrees. For the reasons explained below, this Court does not have subject matter jurisdiction over this action and therefore must remand the case to the Ninth Judicial District Court for the State of New Mexico, County of Curry.

## I.  Federal Question Jurisdiction

BNSF contends that removal is proper because Tres Lotes's claims are completely preempted by the Interstate Commerce Commission Termination Act ("ICCTA"). Doc. 15 at 1. *See also* 49 U.S.C. § 10101 *et seq*. "Ordinarily," the Supreme Court has explained, "federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). *See also Beneficial Nat'l Bank v. Anderson*, 539. U.S. 1, 6 (2003) (noting that a defense based on "the pre-emptive effect of a federal statute" generally does not constitute grounds for removal). "However the Supreme Court has recognized an exception or 'independent corollary'" to this general rule "known as the 'complete pre-emption' doctrine." *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004) (citing *Caterpillar*, 482 U.S. at 393). Any cause of action that is "completely" preempted is "considered, from its inception, a federal claim, and therefore arises under federal law" for jurisdictional purposes. *Caterpillar*, 482 U.S. at 393. *See also Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004). Stated differently, complete preemption is a "specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996). Hence, if the ICCTA "completely" preempts

4

Tres Lotes's nominally state law claims, this Court has federal question jurisdiction over those

claims.

To begin, the ICCTA provides that "the jurisdiction of the [Surface Transportation

Board] over:

>   (1)   transportation by rail carriers, and the remedies provided in this part with respect
>         to rates, classifications, rules (including car service, interchange, and other
>         operating rules), practices, routes, services, and facilities of such carriers; and
>   (2)   the construction, acquisition, operation, abandonment, or discontinuance of spur,
>         industrial, team, switching, or side tracks, or facilities, even if the tracks are
>         located, or intended to be located, entirely in one State,
>
> is exclusive.  Except as otherwise provided in this part, the remedies provided under this
> part with respect to regulation of rail transportation are exclusive and preempt the
> remedies provided under Federal or State law.

49 U.S.C. § 10501(b).  "Transportation," in turn, is defined as:

>   (A)   a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property,
>         facility, instrumentality, or equipment of any kind related to the movement of
>         passengers or property, or both, by rail, regardless of ownership or an agreement
>         concerning use; and
>   (B)   services related to that movement, including receipt, delivery, elevation, transfer
>         in transit, refrigeration, icing, ventilation, storage, handling, and interchange of
>         passengers and property

49 U.S.C. § 10102(9).

Despite this express preemption in the statute, however, the question remains whether

Congress intended for the ICCTA to exert complete preemption in the context presented in the

instant case.  *See Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) ("In

determining the nature and reach of federal preemption, Congress's intent is the 'ultimate

touchstone.'") (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  A careful reading of

the statute reveals that its preemptive effect is confined to the regulation of rail transportation

and that, "[w]hile certainly expansive, [the] definition of 'transportation' does not encompass

everything touching on railroads."  *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1129 (10th

Cir. 2007).  *See also St. Charles Inv. Co. v. C.I.R.*, 232 F.3d 773, 776 (10th Cir. 2000) ("we will assume that Congress's intent is expressed correctly in the ordinary meaning of the words it employs.").

The Court is persuaded by the reasoning of the Fifth Circuit, which explained that the preemptive "exclusive remedies" provision quoted above is "the relevant part of Section 10501(b) for determining the scope of the ICCTA's preemption of state law."  *Elam*, 635 F.3d at 805.  That is, "§ 10501(b) completely preempts state laws (and remedies based on such laws) that directly attempt to manage or govern a railroad's decisions in the economic realm." *Id.*, at 807.  By contrast, the ICCTA does not completely preempt state laws otherwise unrelated to railroads whose impact on rail transportation is "merely incidental."  *Id.*, at 813.

The facts of *Elam* itself are illustrative of this distinction.  There, a couple who drove their "automobile into the side of a train" owned by the defendant railroad brought suit, alleging negligence *per se* based on a violation of a state statute in addition to a claim for ordinary negligence.  *Id.*, at 801-02.  The panel explained that because the Mississippi statute in question sought to "manage or govern rail transportation," including purporting to regulate directly the railroad's "decisions as to train speed, length, and scheduling," it was completely preempted by the ICCTA.  *Id.*, at 807.  In other words, because the statute directly limited the amount of time a train was permitted to "block" road traffic at a rail crossing and therefore overtly interfered with the operations of the railroad, it was completely preempted by the ICCTA.  *Id.  See also Guild v. Kan. City S. Ry. Co.*, 541 F. App'x 362, 365 (10th Cir. 2013) (holding that claim was  preempted where plaintiff sought order compelling defendant "to install an upgraded [rail] switch" and contrasting that claim with an ordinary tort claim for damaging a spur track).

However, the court continued that the ICCTA did not completely preempt the couple's ordinary negligence claim because a "typical negligence claim seeking damages for a typical crossing accident … does not directly attempt to manage or govern a railroad's decisions in the economic realm." *Elam*, 635 F.3d at 813.  The court explained that the "effects of state negligence law on rail operations are merely incidental" in the same fashion as "***state property laws*** and rules of civil procedure that generally have nothing to do with railroad crossings."  *Id.* (emphasis added) (internal quotation marks omitted).  *See also Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 411 (5th Cir. 2010) (discussing "ordinary" preemption and stating that the "relevant question under the ICCTA is whether [the] railroad crossing dispute invokes laws that have the effect of managing or governing, and not merely incidentally affecting, rail transportation").  Thus, the statute's express preemption of remedies respecting the "regulation of rail transportation" circumscribes the scope of the ICCTA and its preclusive effect.

This explanation of the complete preemption doctrine as applied to the ICCTA resonates strongly with the Tenth Circuit's decision in *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126 (10th Cir. 2007).  There, in discussing ordinary preemption, the court refused to find that "a generally applicable state law regulating the disposal of detritus, or maintenance of vegetation" was preempted by the ICCTA because it did not "collide[] with the Federal scheme of economic regulation or deregulation."  *Id.*, at 1131.  In its discussion, the court recognized much the same distinction as the Fifth Circuit articulated in *Elam* years later.  Citing favorably the Southern District of Mississippi's decision in *Rushing v. K. City S. Ry Co.*, the court differentiated between claims that "sought to enjoin the [railroad] from operating its switch yard in the manner it currently employs" and claims that did "not directly relate to the manner in which the Defendant

conducts its switching activities." 194 F. Supp. 2d 493, 500-01 (S.D. Miss. 2001). *See also Emerson*, 503 F.3d at 1131.

This same distinction must be drawn here. Tres Lotes's contract, quasi-contract, and property claims are each predicated on areas of substantive New Mexico law that are generally unrelated to rail transportation of any kind. *Cf. New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008) ("We have held that the complete preemption doctrine applies to state causes of action that 'fall squarely' under 49 U.S.C. § 10501(b) of the ICCTA."). Thus, this case is of a piece with the "[r]outine crossing disputes" that "are *not* typically preempted" by the ICCTA, "despite the fact that they touch the tracks in some literal sense." *Id.*, at 332-33.

In much the same way, the Surface Transportation Board itself has explained that "[t]hese crossing cases are ***typically resolved in state courts***" and that "non-conflicting uses, such as non-exclusive easements for at-grade road crossings, wire crossings, sewer crossings, etc., are not preempted so long as they would not impede rail operations or pose undue safety risks." *Id.*, at 333 (emphasis added) (citing *Maumee & W. R.R. Corp. and RMW Ventures, LLC–Petition for Declaratory Order*, STB Finance Docket No. 34354, 2004 WL 395835, at *2 (S.T.B. March 2, 2004)). Notably, the STB expressed this position in the context of *ordinary* preemption; if typical easement cases are generally not preempted at all, it is dubious at best to contend that they are so manifestly federal in nature as to qualify for complete preemption. To hold otherwise would convert complete preemption from a narrow exception to the prevailing rule.

The Court hastens to emphasize that its holding is limited to the "extraordinary" doctrine of complete preemption; Tres Lotes's claims may be preempted by the ICCTA, but that determination is consigned to the considered judgment of the state court on remand. *See Felix*, 387 F.3d at 1158 (explaining that if "complete preemption does not apply, but the plaintiff's state

claim is arguably preempted … the district court … lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.") (quoting *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir.1995)).  *See also Caterpillar Inc.*, 482 U.S. at 393 ("it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").  Because this Court declines to hold that the ICCTA completely preempts Tres Lotes's claims, there is no federal question present in this case and the Court must turn to the question of diversity jurisdiction.

## II.    Diversity Jurisdiction

Although this action does not present a federal question, this Court has subject matter jurisdiction if the case meets the requirements for diversity jurisdiction set forth in 28 U.S.C. § 1332.  The statute contains two independent requirements.  *See Anderson v. Lehman Bros. Bank, FSB*, 528 F. App'x 793, 795 (10th Cir. 2013) ("Diversity jurisdiction, the basis for removal here, exists when the amount in controversy requirement is met and the parties are completely diverse.").  First, the amount in controversy in the action must exceed $75,000.  28 U.S.C. § 1332(a).  Second, the parties must be diverse.  "Diversity" requires that "the citizenship of all defendants must be different from the citizenship of all plaintiffs."  *McPhail v. Deere & Co.*, 529 F.3d 947, 950 (10th Cir. 2008).  The party invoking the jurisdiction of the federal courts bears the burden of proving that these requirements are met.  *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) ("a party invoking diversity jurisdiction bears the burden of proving its existence by a preponderance of the evidence.").

Here, Plaintiff Tres Lotes requests injunctive relief *or* monetary damages not to exceed $74,000, an amount apparently selected in a calculated attempt to avoid federal diversity jurisdiction.  *See* Doc. 8-1 ¶ 131.  BSNF counters that this cap is both artificial and deceptive, contending that the value of the requested injunction is greater than the $75,000 jurisdictional threshold.  *See*  Doc. 1 at 9-10.  Therefore, BNSF argues, despite the limit in Tres Lotes's Verified Complaint, the amount in controversy requirement has been satisfied because "it will cost BNSF more than $75,000 to" comply with the requested injunctive relief.  Doc. 1 at 10-11.

Even assuming, *arguendo*, that BNSF's assessment of the value of a potential injunction is both accurate and sufficiently probative for jurisdictional purposes, it still does not reflect the amount in controversy in this case.  Tres Lotes's Verified Complaint states overtly that it "does not seek injunctive relief that, in the judgment of the Court" would result in a loss of more than $74,000 to BNSF.  Doc. 8-1 ¶ 131.  Similarly Plaintiff seeks monetary damages not to exceed $74,000 *if and only if* its injunctive relief is denied.  *Id*.  Hence, any potential recovery valued at more than $74,000 is simply not at issue in this case.   This express limit on Tres Lotes's potential recovery disqualifies the case from removal predicated on diversity jurisdiction.

None of the cases BNSF cites is to the contrary.  For example, the court in *McPhail v. Deere & Co*. confronted a situation in which the "state court complaint [did] not identify a specific amount" sought as recovery.  529 F.3d at 95.  The court held that in such circumstances, "the burden is on a defendant seeking removal to demonstrate that this jurisdictional prerequisite is satisfied" and that "a plaintiff cannot avoid removal merely by declining to allege the jurisdictional amount."  *Id.  See also Warner v. CitiMortgage, Inc.*, 533 F. App'x 813, 816 (10th Cir. 2013) (addressing a case in which no monetary value had been asserted in the complaint).  Similarly, in *Marlow LLC v. BellSouth Telcoms., Inc.*, No. 2:10cv135–KS–MTP, 2013 WL

30126, at *1-2 (S.D. Miss. Jan. 2, 2013), the plaintiff submitted an affidavit that purported to

limit his monetary recovery to $50,000, but maintained a separate request for injunctive relief

that, when coupled with the damages claim, amounted to more than "requisite jurisdictional

minimum."

These cases contrast sharply with the case at bar.  Tres Lotes's Verified Complaint leaves

no ambiguity that the *aggregate value* of the suit is limited to $74,000 and does not admit of the

possibility of recovery beyond that amount.  Doc. 8-1 ¶ 131.  BNSF has not presented, and

research has not revealed, a case where a federal court ignored a plaintiff's self-imposed,

unequivocal limit on recovery in order to establish diversity jurisdiction over that plaintiff.

Because Tres Lotes cannot recover more than $74,000 in this action, the Court finds that the

amount in controversy requirement has not been met.

This holding comports with the decisions of other courts that have confronted similar

situations.  The District of Maine addressed this precise issue and cogently explained that

"[e]ven if [the plaintiff's] claim could be worth more than $75,000, the United States Supreme

Court has noted that a plaintiff is permitted to prevent a defendant from removing to federal

court by 'resort[ing] to the expedient of suing for less than the jurisdictional amount.'"  *Raymond*

*v. Lane Const. Corp.*, 527 F. Supp. 2d 156, 158-59 (D. Me. 2007) (quoting *St. Paul Mercury*

*Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938)).  *See also Phillips v. Whirlpool Corp.*, 351

F. Supp. 2d 458, 461 (D.S.C. 2005) ("this court has made clear that, ordinarily, the sum claimed

by a plaintiff in her complaint determines the jurisdictional amount, and a plaintiff may plead

less than the jurisdictional amount to avoid federal jurisdiction.").  This rule is a logical

consequence of the premise that a plaintiff is viewed as the "master of the claim" and therefore

may "preclude removal" by placing a limit on recovery "specifically less than the federal

requirement" in much the same way that she is permitted to select which claims to bring. *Gafford v. General Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993).

Indeed, it appears that the authorities cited by BNSF hew to this same understanding of the amount in controversy requirement.  For example, the Southern District of West Virginia, in a case cited favorably in the *Marlow* decision on which BNSF relies, noted that it "has consistently remanded cases where a Plaintiff executes an affidavit or certification limiting recovery, other than an *ad damnum* clause, *before* removal."  *Hatfield v. Wilson*, No. 3:12–0944, 2012 WL 1899653, at *2 (S.D.W.V. May 24, 2012) (citing *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 485 (S.D.W.V. 2001)).  While Tres Lotes did not submit a separate affidavit or declaration regarding damages, its Verified Complaint functions to the same effect.  *Cf. Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002) (explaining that a "district court may treat a verified complaint 'as an affidavit for purposes of summary judgment'").

Consequently, the amount in controversy requirement has not been met and this Court cannot ground jurisdiction in 28 U.S.C. § 1332.  Absent subject matter jurisdiction, this Court is powerless to hear this case; the Court's sole option is to remand the matter to the state court from which it was removed.  *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## CONCLUSION

Because the ICCTA does not completely preempt Tres Lotes's claims and because the amount in controversy is less than $75,000, this Court lacks subject matter jurisdiction and must remand the case to the Ninth Judicial District Court for the State of New Mexico, County of Curry.

**IT IS THEREFORE ORDERED** that the Plaintiff's Motion to Remand is granted.

Dated this 21st day of November, 2014.

_____

**MARTHA VAZQUEZ**
UNITED STATES DISTRICT JUDGE